# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-0002V
UNPUBLISHED

| | |
|---|---|
| K.A.,<br><br>                      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                      Respondent. | Chief Special Master Corcoran<br><br>Filed: September 14, 2023 |

*Kathleen Margaret Loucks*, Lommen Abdo Law Firm, Minneapolis, MN, for Petitioner.

*Ryan Daniel Pyles*, U.S. Department of Justice, Washington, DC, for Respondent.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM**[1]

      On January 2, 2020, K.A. filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on October 9, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this unpublished opinion contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the opinion will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, a preponderance of the evidence supports the conclusion that the onset of Petitioner's right shoulder pain did not likely occur within 48 of vaccination – meaning she cannot establish the onset required for her Table SIRVA claim. Additionally, there is evidence of an alternative explanation (an accident that occurred within weeks of vaccination) for her symptoms. Therefore, the Table claim must be dismissed. Petitioner will be afforded the opportunity to pursue a non-Table claim (to which Respondent may likewise respond) following transfer out of the SPU, but any such claim must take into account the factual deficiencies that prevent a Table claim from succeeding.

## I.   Relevant Procedural History

As noted above, this case was initiated in January 2020. On June 11, 2021, Respondent filed his Rule 4(c) Report recommending that entitlement to compensation be denied and the petition dismissed. ECF No. 32. Respondent argued that "the medical records do not establish that petitioner suffered the first symptoms or manifestation of onset of a shoulder injury within 48 hours of her October 9, 2018 flu vaccination." *Id.* at 8. Respondent also argued that Petitioner's Table claim would fail because her symptoms were not limited to the arm in which the vaccine was given and "[P]etitioner has not addressed alternate causes of her shoulder pain." *Id.* at 9. Lastly, Respondent asserted that Petitioner had neither alleged nor proven that her injury was caused-in-fact by her October 9, 2018 vaccination. *Id.* at 10-11.

In a Scheduling Order filed on July 6, 2021, I expressed the preliminary view that based on review of the existing record, a hearing would not be necessary, and that I could issue a fact ruling regarding the aforementioned issues after providing the parties an opportunity to file briefs. ECF No. 34.

On August 19, 2021, Petitioner filed a Motion for a Ruling on the Record ("Motion") arguing that she had established entitlement to compensation for SIRVA. ECF No. 37. Respondent filed his brief in reaction to Petitioner's Motion on October 20, 2021 ("Response"). ECF No. 39. He maintains that "[Petitioner's] claim does not satisfy the Vaccine injury Table requirements for SIRVA or meet the standards for causation in fact." *Id.* at 11-12. Petitioner filed her Reply on November 8, 2021. ECF No. 43.

## II.   Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation,

and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly

recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV) (2017). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> *Shoulder injury related to vaccine administration (SIRVA).* SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

4

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### III.   Table SIRVA Claim

#### A.  Issue

The following issues are contested: whether (a) Petitioner's pain and reduced range of motion were limited to the shoulder in which the intramuscular vaccine was administered; (b) Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours; and (c) whether there exists another condition which would explain Petitioner's symptoms as set forth in the Vaccine Injury Table and QAI for a Table SIRVA. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI); 42 C.F.R. § 100.3(c)(10)(iii) (requirement that pain and reduced range of motion are limited to the shoulder of vaccine administration); 42 C.F.R. § 100.3(c)(10)(iv) (requirement that no other condition or abnormality exists that would explain a petitioner's symptoms).

#### B.  Basis for Factual Findings

I make my findings regarding these issues after a complete review of the record to include all medical records, affidavits, and the parties' briefing. I find most relevant the following:

- Petitioner is employed as a registered nurse at Elder Care Facility. Ex. 3 at 1; Ex. 7 at 94; Ex. 8 at 203.

- On October 2, 2018 (a week prior to the vaccination at issue), Petitioner slipped and fell on her right side – the same side of vaccine administration she alleges. Ex. 5 at 169. In her supplemental affidavit, signed on August 6, 2021, Petitioner avers that the fall did not cause any injury and that she was able to "[get] right back up." Ex. 9 at 3. *See also* Ex. 5 at 169 (March 19, 2019 physical therapy note indicating that Petitioner "did not hurt her shoulder" and had no pain or swelling after falling).

- In a July 2021 affidavit, Petitioner's husband avers that he "was a witness to my wife's . . . fall which occurred a few weeks before her flu shot on October 9, 2018. It is my

5

understanding from both witnessing that fall and from conversations with my wife, that she did not injure her right shoulder at the time of that fall." Ex. 10 at 1.

- On October 9, 2018, Petitioner was administered a flu vaccine at Elder Care Facility. Ex. 1 at 1. The record of vaccine administration indicates that it was injected into her left deltoid. *Id.*

- In her affidavit, however, signed on January 2, 2020, Petitioner avers that the flu vaccine was injected "much too high" into her *right arm*. Ex. 3 at 1. Petitioner further avers that at the time of injection she "felt a searing/tearing sensation that I had never felt before during an immunization. I drove home . . . took some ibuprofen for the discomfort and went to bed." *Id.*

- Petitioner's daughter and co-worker, J.T., signed an affidavit on July 29, 2021. Ex. 11. In it, she testifies that she was with Petitioner at the time of vaccination. *Id.* "I sat to the left of her and she was to my right. We both received injections in our right arms." *Id.*

- J.T. further avers that "[a]fter receiving her flu shot in her right arm, my mom complained of immediate onset of pain. She said this shot was very high on her shoulder." Ex. 11 at 1.

- On October 26, 2018 (17 days post-vaccination), Petitioner presented to Dr. Gaurav Jaswal for an evaluation of her right shoulder. Ex. 5 at 131-132. This is the first post-vaccination record evidencing any treatment Petitioner received.

- The record documenting this October 26th appointment indicates that Petitioner injured her shoulder "about [two] weeks ago," and that she had recently fallen on her right side. *Id.* at 131. While Dr. Jaswal noted that Petitioner had shoulder pain "since then," he also wrote that Petitioner "[i]nitially did not notice [pain] but i[t] has been getting more bothersome over time." *Id.* This record does not mention the October 9th vaccination, or attribute pain to it.

- In her supplemental affidavit, Petitioner states that "I told Dr. Jaswal that I had fallen but had no pain until six to seven days later, until *after* I had [m]y flu shot." Ex. 9 at 3 (emphasis in original).

- In his affidavit, Petitioner's husband avers that Petitioner "only complained of shoulder pain after her flu shot." Ex. 10 at 1.

6

- In her January 2020 affidavit, Petitioner states that, in addition to mentioning her fall, she informed Dr. Jaswal during her October 2018 appointment "that I received the flu vaccine around the same time I had onset of shoulder pain." Ex. 3 at 2.

- On April 11, 2019, Dr. Jaswal added an addendum to the record documenting Petitioner's October 26, 2018 appointment. Ex. 5 at 131. The addendum states that he "recall[s] that [Petitioner] did state that she had received the influenza vaccine around the same time she had onset of her shoulder pain." *Id.*

- On a February 21, 2019 workers' compensation form, and in her August 2021 supplemental affidavit, Petitioner indicates that she first realized that her shoulder injury was "related to . . . work" on November 6, 2018. Ex. 7 at 55; Ex. 9 at 2.

- In her supplemental affidavit, Petitioner states that she was initially "baffled as to what could be causing my pain because I did not know at that time that an injection could cause the severe and excruciating pain that I had been in." Ex. 9 at 3. Petitioner further states that "on November 6, 2018 I was looking at my schedule and saw the flu shot for October 9th on my calendar, it made me think more about it and do some research. It did not take me long before I knew without a doubt that I had a SIRVA injury." *Id.* at 2.

- Petitioner underwent an MRI of her right shoulder on November 19, 2018. Ex. 5 at 133-136. The MRI report indicates that Petitioner had a history of shoulder replacement, and reveals that Petitioner suffered from moderate rotator cuff tendinopathy of the right shoulder, subacromial, subdeltoid bursitis, and mild subchondral edema. *Id.* at 135. Although Petitioner's vaccination is not mentioned, an answer to a Screening Form question indicates "injury or recent trauma" to Petitioner's right shoulder took place on October 9, 2018. *Id.* at 133.

- On November 20, 2018, Petitioner again presented to Dr. Jaswal to discuss the results of her MRI. Ex. 5 at 138-140. In addition to undergoing a steroid injection, Petitioner was assessed with right shoulder pain and tendinopathy of her right rotator cuff. *Id.* at 138. The record does not mention Petitioner's October 9, 2018 vaccination.

- Petitioner presented to Dr. Mark Krisburg at Altru Occupational Medicine ("Altru") on February 25, 2019. Ex. 5 at 141-146. The medical note indicates that Petitioner sustained a right shoulder injury on October 9, 2018. *Id.* at 141. Petitioner reported that she "had [a] flu vaccination high on right deltoid and developed right shoulder pain on same day." *Id.* This is the first record in which pain is associated with the October 2018 vaccination.

7

- Petitioner returned to Altru and was seen by Family Nurse Practitioner ("FNP") Charlotte Naveau on March 13, 2019. Ex. 5 at 161-167. FNP Naveau assessed Petitioner with tendinopathy of the right rotator cuff and recommended physical therapy. *Id.* at 166.

- Petitioner underwent an initial physical therapy evaluation on March 19, 2019 for "[t]endinopathy of [R]ight Rotator Cuff." Ex. 5 at 169-173. The note documenting this visit indicates that Petitioner reported right shoulder pain that began on October 9, 2018, following vaccination. *Id.* at 169. Although Petitioner also reported falling on her right side on October 2, 2019, she noted that "she did not hurt her shoulder at that time, no pain or swelling." *Id.*

- On March 29, 2019, the Director of Nursing at Elder Care Facility sent an email to Petitioner. Ex. 4 at 3. In addition to stating that a VAERS report had been filed on Petitioner's behalf, the Director noted that "[a]s far as your medical record and the injection site, we will not be altering the record. Our records accurately reflect what occurred during the administration of the vaccination on 10/9/2018." *Id.*

- The VAERS report reflects that Petitioner was administered a flu vaccine on October 9, 2018 in her left arm. Ex. 4 at 1. The onset of Petitioner's injury was noted to have occurred on February 15, 2019. *Id.*

- In her supplemental affidavit, Petitioner testifies that "the VAERS report was incomplete and inaccurate," and that she was not involved in its submission. Ex. 9 at 2. She further testifies that "February 15, 2019 was the day I first called . . . to get the ball going on a work comp claim and get a copy of my immunization record. This was *not* the date of onset of my pain." *Id.*

- Petitioner presented to occupational therapy on April 9, 2019 for a workability exam concerning her right shoulder. Ex. 5 at 185-186. The note documenting this appointment reflects an October 9, 2018 "date of injury," and Petitioner's "pain from flu shot – worsening." *Id.* at 185.

- Also on April 9, 2019, Petitioner presented to Dr. Krisburg for a follow-up visit. Ex. 5 at 178-184. The medical note again reflects Petitioner's report of a right shoulder injury that occurred on October 9, 2018. *Id.* Dr. Krisburg further noted that:

  [Petitioner] advised her [workers' compensation] claim was denied by [North Dakota Workforce Safety and Insurance ["WSI"] on the basis of the initial treating

> doctor documenting the the [sic] "patient had pain since the fall (that had occurred 6 days prior to development of shoulder pain) BUT DIDN'T REALIZE IT. ??? . . . [Petitioner] is a nurse and was accompanied by her daughter also a nurse when they received the vaccination. They commented to each other 'have you ever seen a vaccination delivered that high into the deltoid muscle.' The history is consistent with the injection having caused the tendonitis of the shoulder from being injected too close to the point where the shoulder tendons exit the shoulder. It is NOT consistent with a tendonitis that developed symptoms 6 days AFTER a fall. Tendonitis from over use or from trauma occurs within 48 hours of the injury. It does not take 6 days for pain and reaction to develop."

*Id.* at 178-179.

- On April 25, 2019, Dr. Krisburg submitted a letter to WSI in support of Petitioner's appeal of her workers' compensation denial. Ex. 8 at 203-205. He noted that Petitioner fell at home seven days prior to the onset of her right shoulder pain. *Id.* at 203. Dr. Krisburg further noted that "[t]he onset of [Petitioner's] right shoulder pain was during the injection of a flu vaccine in the right deltoid area. There was NO pain prior to this injection. There was no delay in the onset of the right shoulder pain from the time of the injection." *Id.* at 203.

- Pursuant to a stipulation signed by Petitioner and WSI in June 2019, WSI agreed to pay Petitioner's medical expenses "for the treatment of her right shoulder rendered only from October 26, 2018 – November 19, 2018." Ex. 7 at 94-98.

- On March 31, 2020, Petitioner presented to Dr. Patrick Walsh, an orthopedist, concerning right shoulder pain. Ex. 8 at 18-22. The medical note reflects Petitioner's report of "[i]nitial pain [that] started in 10/2018 after an [intramuscular] injection." *Id.* at 18. Petitioner was assessed with "[t]endinopathy of right rotator cuff." *Id.* at 20.

## I. Findings of Fact Regarding Contested QAI Criteria for Table SIRVA

### A. Vaccination Situs

Respondent argues that Petitioner has failed to establish that she suffered a Table injury because her symptoms were not limited to the shoulder in which the vaccine was administered. Response at 14. Specifically, he asserts that "[the] vaccination record demonstrates that [Petitioner] received the vaccine in the left shoulder but she complained of symptoms in her right shoulder." *Id.*

9

The record supports a finding that the vaccine at issue was likely administered in Petitioner's right arm. First, Petitioner's contention is corroborated by her daughter, J.T., who was administered a flu vaccine on the same date and time as her mother. In her affidavit, J.T. asserts that "I sat to the left of [Petitioner] and she was to my right. We both received injections in our right arms." Ex. 11.

Second, in the context of seeking care, Petitioner consistently sought treatment for her right shoulder. *See*, e.g., Ex. 5 at 131-132 (October 26, 2018 medical note reflecting Petitioner's initial complaint of right shoulder pain); Ex. 5 at 133-136 (November 19, 2018 MRI report reflecting results of right shoulder imaging); Ex. 5 at 139-140 (November 20, 2018 procedural note documenting the administration of a steroid injection for Petitioner's right shoulder pain). Accordingly, there is some record support for the contention about the situs of administration, beyond her own allegations.

I acknowledge that the vaccine record *itself* indicates that the flu vaccine was injected into Petitioner's left arm. Ex. 1 at 1. And I also recognize that Elder Care Facility has confirmed the accuracy of this document. Ex. 4 at 3. However, it is the only record suggesting a left shoulder situs. All other medical records filed in this case and bearing on Petitioner's post-vaccination treatment support a finding that the vaccine was administered in Petitioner's right arm. I therefore find it slightly more likely than not that Petitioner's October 9, 2018 flu vaccine was injected into her right arm and that her pain was limited to her right shoulder.

### B.     Onset

I acknowledge that the standard applied to resolving onset for an alleged SIRVA is liberal and will often permit a determination in a petitioner's favor. However, not every case can be so preponderantly established. Ultimately the resolution of such fact issues involves weighing different items of evidence against the overall record.

Here, Petitioner's post-vaccination onset claims (which do eventually tend to reflect reports of immediate pain) are offset against the record closest in time to vaccination – and this record does not support Petitioner's claim. Specifically, the medical record documenting Petitioner's October 26, 2018 appointment with Dr. Jaswal (seventeen days post-vaccination) references right shoulder pain "since" Petitioner "tripped . . . and fell." Ex. 5 at 131. Although Petitioner reported that this incident occurred "about [two] weeks" prior (which would be around October 12, 2018), on at least one other occasion she reported falling on October 2, 2018 – one week before her October 9, 2018 vaccination. Ex. 5 at 169. However, whether Petitioner's tumble occurred on October 2 or 12, 2018, the statement that she "has had pain *since*" this accident places the onset of any SIRVA-

related symptoms outside of the 48-hour window – before or after. And while Petitioner's contradictory statement (also made on October 26, 2018) of not "initially" noticing pain in the aftermath of her fall seems to leave open the possibility that her shoulder symptoms were delayed, her corresponding contention of symptoms "getting more bothersome *over time*" (emphasis added) signals a gradual onset of pain that began in close proximity to her fall.

Later on in treatment, Petitioner eventually began to report that her shoulder pain corresponded with vaccination. *See, e.g.*, Ex. 5 at 141 (February 25, 2019 note documenting Petitioner's complaint of right shoulder pain beginning on the date of vaccination); Ex. 5 at 169 (March 19, 2019 physical therapy evaluation reflecting Petitioner's report of right shoulder pain "which started October 9th."); Ex. 3 at 1 (Petitioner's January 2, 2020 affidavit alleging a "searing/tearing sensation" during vaccination). However, the earliest of these assertions was made almost five months post-vaccination. And Dr. Jaswal's addendum to his October 26, 2018 medical note (in which he purports to recall Petitioner's statement that she "received the influenza vaccine around the same time she had onset of shoulder pain") was added six months after the vaccination. Even more attenuated are the witness statements offered by Petitioner's husband and daughter – both of which were signed almost three years after Petitioner's vaccination. While these records are consistent with Petitioner's assertion of an immediate onset, they do not merit more weight than a specific and far closer-in-time record. Accordingly, there is not a preponderance of evidence of onset within 48 hours of vaccination.

### C. Other Condition or Abnormality

The record also suggests the strong possibility that Petitioner's shoulder symptoms may be explained by her fall in October 2018. As previously explained, Dr. Jaswal's record documenting Petitioner's first report of shoulder pain (seventeen days post-vaccination) describes the circumstances of her injury:

> [Petitioner] tripped over her grandson[']s to[y] and fell about 3 steps on the patio and landed on cement floor on her right side her arm tucked against body . . . Since then she has had pain of her right shoulder . . . Pain is located over the lateral aspect of the shoulder over the distal lateral deltoid.

Ex. 5 at 131-132.

Significantly, this appears from this record to have been the purpose of the visit with Dr. Jaswal – to determine if the fall had injured Petitioner. Although Petitioner

11

acknowledges informing Dr. Jaswal about her fall, she emphasizes that she also told him that she "had no pain until six or seven days later, until *after* I had [my] flu shot." Ex. 9 at 3 (emphasis in original). However, this assertion (which is grammatically confusing) is only weakly supported by Dr. Jaswal's addendum noting that Petitioner reported receiving the flu vaccine "around the same time" she experienced the onset of shoulder pain. In effect, Petitioner is arguing that her pain onset, whether from the fall or vaccination, coincided with only the latter – even though a fair reading of the record from the treatment visit with Dr. Jaswal suggests otherwise.

Moreover, it is clear (when comparing Petitioner's detailed description of her fall with her cursory reference to the flu vaccine) that Petitioner initially attributed her shoulder symptoms to her tumble down the stairs. Indeed, Petitioner acknowledges that she did not relate her shoulder pain to vaccination until November 6, 2018 – nearly one month post-vaccination – when she "saw the flu shot for October 9th on my calendar" and "[did] some research." Ex 9 at 2. Petitioner's failure to immediately relate right shoulder pain to vaccination is particularly significant given her description of a "searing/tearing sensation . . . during [the] immunization" and a continuation of pain that "consumed [her] every day." Ex. 3 at 1-2. Claimants who have experienced SIRVA directly report the pain in such terms when they seek treatment for it.

I recognize that Dr. Krisburg opined that Petitioner's injury was the result of vaccination and "NOT consistent with a tendonitis that developed [six] days AFTER a fall." Ex. 5 at 179. However, this opinion appears to be based on Petitioner's statement that she did not "[i]nitially notice [pain]" and does not completely consider the October 2018 visit with Dr. Jaswal. *Id.* at 131; 178. Although statements from treating physicians are generally favored, such evidence is not sacrosanct, can be rebutted, and can be found as unreliable or not dispositive by a special master based on the entirety of the record. Section 13(b)(1) (providing that "[a]ny such diagnosis, conclusion, judgment, test result, report, or summary shall not be binding on the special master or court"). As such, a treating physician's opinion is only as strong as its underlying basis." *See Perreira v. Sec'y of Health & Human Servs.,* 33 F.3d 1375, 1377 n.6 (Fed. Cir. 1994).

In this case, Petitioner's fall would explain the symptoms she experienced. Thus, I find that Petitioner has failed to satisfy this fourth QAI criteria as well.

### IV. Potential for Off-Table Claim

A petitioner's failure to establish a Table injury does not necessarily constitute the end of a case under all circumstances, because he or she might well be able to establish a non-Table claim for either causation-in-fact or significant aggravation. *See Althen v.*

*Sec'y of Health & Human Servs.,* 418 F.3d 1274 (Fed. Cir. 2005); *W.C. v. Sec'y of Health & Human Servs.,* 704 F.3d 1352, 1357 (Fed. Cir. 2013) (citing *Loving v. Sec'y of Health & Human Servs.,* 86 Fed. Cl. 135, 144 (2009)).

Here, it is conceivable that Petitioner may be able to prove that the flu vaccine did likely cause her right shoulder pain – even if onset (which would still have to occur *after* vaccination) fell outside the two-day window provided by the Table. She might also be able to prove that a fall-related injury was made worse by a SIRVA-like experience thereafter. In either case, resolution of this issue will likely require further review and most likely the retention of experts, which I am not inclined to authorize in the SPU. Thus, the claim may go forward as a causation-in-fact claim – but it may no longer remain in SPU.

## Conclusion

Petitioner has not established the onset of her right shoulder pain occurred within 48 hours of vaccination. In addition, there is evidence that a fall that occurred close-in-time to Petitioner's receipt of the flu vaccine would explain the symptoms she experienced. Accordingly, her Table SIRVA claim is dismissed. Pursuant to Vaccine Rule 3(d), I will issue a separate order reassigning this case randomly to a Special Master.

IT IS SO ORDERED.

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master